UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAFE IRA PARTNERS, LLC, TRUSTEE OF THE MILES STANDISH TRUST AND THE MILES STANDISH TRUST,<br>    Plaintiffs,<br>v.<br>JOHN E. DOYLE AND DOYLE REAL ESTATE ADVISORS, LLC,<br>    Defendants. | CASE NO.  3:17-cv-02172-AWT<br><br>JURY TRIAL DEMANDED<br><br>FEBRUARY 5, 2019 |

## FIRST AMENDED COMPLAINT – CORRECTED

1. Plaintiff The Miles Standish Trust (the "Trust") is formed and administered in accordance with Chapter 802c of the Connecticut Statutes.

2. Plaintiff Safe IRA Partners LLC (the "Trustee") is the sole Trustee of the Trust.

3. Defendant Doyle Real Estate Advisors LLC ("DREA") is a foreign limited liability company with its principal place of business and business address in Philadelphia, Pennsylvania.  DREA is registered to do business and is doing business in Connecticut, by providing real estate appraisal services.

4. Defendant John E. Doyle ("Doyle") is a licensed real estate appraiser residing in New Jersey who provided real estate appraisal services, who, at all times relevant to this Amended Complaint, was certified by the Connecticut Department of Consumer Protection as a Certified Real Estate Appraiser, License Number RCG.0000974, and operated with and through Defendant DREA.

5. In late 2015, Plaintiffs were deciding whether a mortgage on real property (the "Property") owned by Municipal Enterprises, Inc. would be adequate collateral to

secure a loan Plaintiffs were considering making to a third-party borrower doing business in Connecticut in connection with the third party borrower's opening a restaurant at Mohegan Sun in Uncasville, Connecticut.

6. In connection with the potential loan, Anne Brensley of BFT-Advisors served as the third-party borrower's agent. Ms. Brensley did not serve as the Trustee's agent.

7. The Property that was to serve as collateral for Plaintiff's loan to the third-party borrower consists of approximately 60 acres located at Middletown Road, Colchester, Connecticut.

8. In or about November 2015, the Trustee engaged Defendants' services to review an appraisal of the Property that had been prepared by Mark Bates of Integra Realty Resources, dated November 3, 2014 with an effective date of October 24, 2014 (the "2014 Appraisal"), so that Defendants could provide their critique of the conclusions found in the 2014 Appraisal.

9. The 2014 Appraisal was prepared for CertusBank, a lending institution.

10. Ms. Brensley had communications with Defendants about the review appraisal, but again, she never acted on behalf of the Trustee.

11. Neither DREA nor Doyle provided the Trustee or the Trust with a written engagement agreement or contract before providing services.

12. Nonetheless, the Trustee – not Ms. Brensley – was the client for whom Defendants prepared the review appraisal. Indeed, Defendants sent an invoice for their services on the review appraisal addressed to the Trustee, not to Ms. Brensley.

13. On or about December 2, 2015, Defendants delivered a review appraisal report ("Report") that contained their conclusions about the 2014 Appraisal to Plaintiffs.

14. The first page of the Report reflects that Defendants prepared it for the Trustee, as it states:

FOR

Eric Fedewa
Safe IRA Partners
1219 East Ave., Ste. 304
Sarasota, FL 34239

15. The Report incorrectly listed BFT-Advisors as the "client" and "intended user." Defendants know these designations were wrong because they know, and knew, that the Trustee was the client and intended user of the review appraisal.

16. Plaintiffs relied on the Report in making their decision regarding whether to loan funds to the third-party borrower. An accurate appraisal would have demonstrated that the contemplated loan would have been under-collateralized. Under no circumstances would Plaintiffs have lent money on an under-collateralized loan.

17. Plaintiffs were harmed immediately upon entering the loan transaction because, as discussed below, it was based on an erroneous review appraisal and inadequate security.

18. At all relevant times, Defendants knew, or should have known, that the review appraisal would or could be used in connection with a lending transaction where the Property would or might serve as collateral. It was reasonably foreseeable that the Trustee would use the review appraisal in connection with a lending transaction with the Property serving as collateral, and it was reasonably foreseeable that the review appraisal could or would affect the Trustee's decision regarding whether or not to enter a loan transaction.

19. In making the Report, Defendants were obligated to follow industry

standards of care, such as Uniform Standards of Professional Appraisal Practice (USPAP) guidelines.

20.   In or about December 2015, Plaintiffs loaned funds to the third-party borrower based on the conclusions contained in the Report and accepted a mortgage (the "Mortgage") on the Property.  The loan transaction occurred in Connecticut.

21.   The Mortgage provides Plaintiffs with remedies if the third-party borrower defaulted on the loan, including foreclosure.

22.   In or about April 2016, the third-party borrower defaulted on its loan obligations to Plaintiffs, triggering the Mortgage obligations and remedies.

23.   Plaintiffs have commenced an action in the Connecticut Superior Court to foreclose the Mortgage pursuant to its terms.  *See* Docket No. KNL-CV16-6027849-S.

24.   Plaintiffs have become aware that the value of the Property (and the mortgage they hold on it) is far less than as represented in the Report.

25.   Defendants failed to adhere to industry standards of care in preparing the Report, in that Defendants' Report used faulty methodology in determining highest and best use by way of comparable land sales and listings, because Defendants did not limit their comparable sales to similar properties.

26.   Defendants failed to adhere to industry standards of care in preparing the Report, in that Defendants' Report, while purporting to include a valuation for residential purposes, erroneously assumed that zoning variances would allow for commercial office and "flex" construction instead of the residential purposes for which the Property was zoned.  This assumption served to overinflate the Property's true value.

27.     Defendants failed to adhere to industry standards of care in preparing the Report, in that it was not based on an in-depth due diligence analysis.

28.     Defendants failed to adhere to industry standards of care in preparing the Report, in that it valued 40 acres of the Property at $30,000 per acre despite their knowing that a nearby property, without the steep slopes and solid waste landfill, was valued at only $26,000 per acre in its asking price.

29.     Based on their experience, Defendants knew or should have known that the Property's value would be less than the $26,000 per acre asking price of a nearby property.

30.     Based on their experience, Defendants knew or should have known that the asking price overinflated the true value of a property which, in most instances in a flat real estate market like that admittedly present in 2014-2015, is less than the asking price. Defendants' Report failed to distinguish between actual sales prices and asking prices in their review of comparable sales and listings in the prices of valuing the Property and, as a result, Defendants failed to adhere to industry standards of care in preparing the Report.

31.     Plaintiffs engaged Defendants to critique the 2014 Appraisal and its use of comparable sales, and Defendants represented that they would satisfy industry standards. But Defendants improperly deviated from this task and breached the contract by undertaking their own capitalized valuation of the Property and by failing to satisfy industry standards, as promised.

32.     Unlike the 2014 Appraisal, which valued the Property using the comparable sales method based on the Property's use as a landfill, Defendants' Report apportioned the Property's value to residential uses as well as its use as a landfill.

33. Defendants failed to adhere to industry standards of care in preparing the Report, in that it disclosed no "extraordinary assumptions" at all for the Property.

34. Defendants' Report indicated that the Property's value exceeded its assessed value of $111,500, and negligently stated that the Property's value for residential purposes alone was $1.2 million.  The Property's actual value is currently estimated to be less.

35. Defendants stated that the purpose of the Report was, among other things, to judge the acceptability of comparable properties, but Defendants failed to meet that purpose.

36. Defendants failed to follow industry standards of care, such as Uniform Standards of Professional Appraisal Practice (USPAP) guidelines.

37. Defendants held themselves out to Plaintiffs as experts in their field of real property appraisal services, but did not provide the expertise promised.

38. The Trustee neither signed the Report nor disclaimed Defendants' liability with respect to the Report – in writing or otherwise.

**COUNT ONE:  BREACH OF CONTRACT**

39. Paragraphs 1 through 38 above are incorporated by reference and realleged as if set forth fully herein as Paragraphs 1 through 38 of this Count One.

40. Plaintiffs' engagement of Defendants' appraisal services, as alleged above, created an implied contract between Plaintiffs and Defendants the terms of which required Defendants to provide appraisal services that were competent, professional and adhered to all industry standards of care, such as USPAP guidelines.

41. Defendants breached the terms of their implied contract with Plaintiffs by failing to provide appraisal services that were competent, professional and adhered to all industry standards of care, including USPAP guidelines, as alleged above.

42. As a result of Defendants' breach of the terms of their implied contract with Plaintiffs, Plaintiffs have sustained damages.

**COUNT TWO: NEGLIGENCE**

43. Paragraphs 1 through 42 of Count One are incorporated by reference and realleged as if set forth fully herein as Paragraphs 1 through 42 of this Count Two.

44. In accepting Plaintiffs' engagement of their appraisal services, Defendants owed Plaintiffs a duty of care to provide them with appraisal services that were competent and professional, and that adhered to industry standards.

45. Defendants, however, failed to provide Plaintiffs with such services and were negligent in failing to do so.

46. As a result of Defendants' negligence, Plaintiffs have sustained damages.

**COUNT THREE: NEGLIGENT MISREPRESENTATION**

47. Paragraphs 1 through 46 of Count Two are incorporated by reference and realleged as if set forth fully herein as Paragraphs 1 through 46 of this Count Three.

48. As alleged above, as part of Defendants' engagement, they made certain representations to Plaintiffs regarding the value of the Property, which was overstated, inaccurate and otherwise wrong.

49. As further alleged above, Defendants' representations to Plaintiffs regarding the Property's value negligently misrepresented its value.

50. As a result of Defendants' negligent misrepresentations, Plaintiffs have

sustained damages.

    **WHEREFORE**, Plaintiffs request:

    1.    Compensatory damages

    2.    Prejudgment interest and costs incurred by Plaintiffs in the prosecution of this action.

    3.    Such other and further relief as the Court shall deem appropriate.

**SAFE IRA PARTNERS, LLC, TRUSTEE OF THE MILES STANDISH TRUST AND THE MILES STANDISH TRUST**

By: /s/ Glenn A. Duhl
Glenn A. Duhl ct03644
Zangari Cohn Cuthbertson
   Duhl & Grello P.C.
59 Elm Street, Suite 400
New Haven, CT 06510
Tel.: (203) 786-3709
Fax: (203) 782-2766
gduhl@zcclawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2019, a copy of the foregoing Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

   /s/ Glenn A. Duhl
Glenn A. Duhl ct03644